[Civ. No. 16951.  Second Dist., Div. Three.  Oct. 31, 1949.]

PAUL OVERTON, Respondent, v. THE VITA-FOOD CORPORATION (a Corporation), Appellant.

Charles I. Schottland for Appellant.

Neil G. Locke for Respondent.

VALLÉE, J.—Appeal by defendant, The Vita-Food Corporation, from a judgment for plaintiff in an action to recover compensation for services rendered under the terms of a written contract. The action was tried by the court without a jury.

On February 5, 1942, appellant and respondent entered into a written contract by which appellant employed respondent to serve as its president from January 1, 1942, to December 31, 1946. The contract provided that it was understood that respondent would be engaged primarily in the practice of law but that he should devote as much time as might be necessary or proper in the interests of the corporation and perform all duties and services as the managing director or the board of directors might direct from time to time and that he should receive as compensation for his services a salary of $250 a month. It contained the following proviso: "Provided, however, that the said employment shall be totally suspended and no services shall be rendered by or required of Overton and the salary of Overton shall not accrue, become

owing or due for the period or periods during which any or all of the following occur: The plant or plants of the Corporation are out of production from causes incident to or resulting from the present and prospective emergent conditions, or other causes beyond the reasonable control of the Corporation, such as, but without limitation to, transportation delays or interruptions, strikes, and acts of God. The plant or plants of the Corporation shall be deemed out of production during any month if the production in such month does not exceed forty per cent (40%) of one-third (⅓) of the actual production during the last three (3) months of 1941; laboratory and research work are not and shall not be considered as contributing to or being a part of production.''

The complaint alleged the contract; that respondent performed the services required by the contract to the end of 1946; that he had not been paid for 1945 or 1946, except $500 paid in 1946, and that $5,500 was unpaid. The answer alleged that the plants of appellant were out of production within the meaning of the contract in 1945 and 1946, and that, therefore, no salary was due respondent.

The court found the allegations of the complaint true except it found that $125 was paid in 1945. It also found: 1. ''That at no time during the term of such written agreement was or were any plant or plants of Vita-Food 'out of production' within the meaning or effect of said written agreement; nor at any time during such term was any plant or plants of Vita-Food 'out of production' by reason of 'emergent conditions,' or otherwise, within the meaning or effect of said written agreement (Clause 2).'' 2. ''That on or about November 30, 1942, Vita-Food sold to another entity a certain trade-mark, and right to manufacture products offered to the market under such trade-mark, for a consideration of Two Hundred Thousand ($200,000.00) Dollars; that all of such consideration has been paid; that such sale was not a forced or involuntary sale; that by so selling Vita-Food voluntarily placed it out of its power to meet the provisions of the so-called 'production clause' (Clause 2) set forth in said written agreement; and that at all times during the years 1945 and 1946 Vita-Food was financially able to pay plaintiff the salary or compensation agreed to be paid him under said written agreement.'' 3. ''. . . that Vita-Food requested of, and accepted from, plaintiff the services rendered by plaintiff during such years 1945 and 1946, and accepted the benefits thereof; and that Vita-Food

is estopped and precluded, by and as a result of its conduct, from denying or refusing to plaintiff payments of the salary or compensation otherwise due to him under the terms of said written agreement.'' Judgment was rendered for respondent in the sum of $5,375, with interest.

Appellant concedes the making of the contract, the payments made in 1945 and 1946, and nonpayment of the balance for those years. It claims that the other findings are entirely unsupported by the evidence.

André Gide once observed: ''Everything has been said already; but as no one listens, we must always begin again.'' With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen. We are satisfied from an examination of the voluminous transcript that the findings are amply supported by the evidence.

Appellant first says that we are not bound by the trial court's construction of the contract and are called upon to determine its meaning as a matter of law. Counsel cite *Moore* v. *Wood,* 26 Cal.2d 621, 630 [160 P.2d 772], *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825], and *Texas Co.* v. *Todd,* 19 Cal.App.2d 174, 185 [64 P.2d 1180]. This rule applies only where the trial court's decision was based solely on the terms of the written instrument. (*Union Nat. Bank* v. *Hunter,* 93 Cal.App.2d 669, 673 [209 P.2d 621].) This was the situation in the cases cited by counsel. The rule is otherwise where parol evidence is introduced in aid of interpretation of the contract and where the evidence is such that conflicting inferences may be drawn therefrom. In such case the rule is that a reviewing court will accept or adhere to the interpretation of a contract adopted by the trial court and not substitute another of its own. (*Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) In the case at bar evidence was introduced in aid of interpretation of the contract and conflicting inferences may be drawn therefrom.

Appellant argues that we must determine as a matter of law that respondent's employment was suspended in 1945 and 1946 because the evidence is without conflict to the effect

that the "plant or plants" were out of production as the term is defined in the contract. Assuming the evidence to be without conflict in this respect, that fact does not settle the question. The contract says that the employment shall be suspended if the plant or plants are out of production "from causes incident to or resulting from the present and prospective emergent conditions, or other causes beyond the reasonable control of the Corporation, such as, but without limitation to, transportation delays or interruptions, strikes, and acts of God." The court, in the light of the evidence, interpreted "emergent conditions" to mean war conditions. No contention is made here that the evidence in aid of interpretation of the contract was inadmissible. The court found on substantial evidence that the fact that appellant was out of production in 1945 and 1946 was not due to "emergent conditions" but was due to the fact that appellant by selling a trade-mark for $200,000 "voluntarily placed it out of its power to meet the provisions of the so-called 'production clause.'" Having voluntarily placed itself out of production so as to prevent its performance of the contract, appellant will not be permitted to deny liability. ■ A party to a contract cannot take advantage of his own act or omission to escape liability thereon. (17 C.J.S. § 468, p. 966; 12 Am.Jur. § 381, p. 957.) Where a party to a contract prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability. (*Bewick* v. *Mecham*, 26 Cal.2d 92, 99 [156 P.2d 757, 157 A.L.R. 1277]; *Pacific Venture Corp.* v. *Huey*, 15 Cal.2d 711, 717 [104 P.2d 641]; *Crane* v. *East Side Canal etc. Co.*, 6 Cal.App.2d 361, 367 [44 P.2d 455]; *Carl* v. *Eade*, 81 Cal.App. 356, 358 [253 P. 750].) ■ Whether appellant voluntarily placed it out of its power to meet the production clause of the contract, and whether respondent waived the breach, were questions of fact for the determination of the trial court and not questions of law for this court, as appellant appears to contend. Since appellant was not out of production from one of the causes specified in the contract, respondent's employment was not suspended.

■ Appellant claims the finding that it was financially able to pay respondent's salary is not supported by the evidence. While making the contention, appellant says that since the contract was not based on ability to pay, the finding is immaterial. It obviously is immaterial and surplusage. It

may be noted, however, that one of defendant's exhibits shows that during the year ending October 30, 1945, it received from the sale of the trade-mark $53,367.81. Respondent's annual salary was $3,000.

Appellant next claims that the finding that it requested of, and accepted from, respondent the services rendered by him in 1945 and 1946 and accepted the benefits thereof and that appellant is estopped by its conduct from denying to respondent payment of his salary, is contrary to the evidence. Appellant argues that the services actually performed by respondent in 1945 and 1946 were not great and that he was paid therefor by the $625 which he received. There is substantial evidence that respondent performed all of the services he was asked to perform in 1945 and 1946. He so testified. He also testified that at all times in 1945 and 1946 he held himself out to appellant "to perform such services as might be required" of him. Even if it can be said that the services performed by respondent in 1945 and 1946 were not great, yet if he was ready and willing to perform at all times if work had been offered, and no work was offered, and he was not discharged pursuant to the contract, then the contract was in full force and effect and he is entitled to his salary. (*Downs* v. *Atkinson,* 207 Cal. 259, 262 [277 P. 723] ; *Payne* v. *Pathe Studios, Inc.,* 6 Cal.App.2d 136, 141 [44 P.2d 598].) As said by the learned trial judge, respondent "held himself out as ready, willing and able to perform any duties, to-wit, legal or in his capacity as an officer, and that is the only obligation he had."

The appeal is wholly devoid of merit. Affirmed.

Shinn, P. J., and Wood, J., concurred.

A petition for a rehearing was denied November 15, 1949, and appellant's petition for a hearing by the Supreme Court was denied December 29, 1949.